It appeared that in 1811 a judgment had been obtained against one Bell, on which executions had regularly issued to the coroner of the county of Hyde, who, after the death of Bell, levied on the negro Lewis, in the possession of one John Ufford, his executor, and on 7 July, 1818, sold the same at public said to one Dukes.
It was proved on the trial that during the bidding Dukes was sent for by Ufford, who was sick at the time; that the bidding was suspended during his absence, and that on his return Dukes said that Ufford directed him to buy, and he accordingly bid of the negro. It further appeared that previous to the sale Ufford had been heard to request Dukes to purchase the negro for him. The coroner testified that Dukes paid him about $20 of the purchase money, that the balance of it was never paid him by any one, but from a belief that it had in some manner been settled by Ufford, he executed to Ufford a bill of sale for the negro, and (215) immediately after the sale the negro went into the possession of Ufford. Dukes testified that Ufford was indebted to him at the time of the sale in the sum of $200; that Ufford requested him as his agent to purchase the negro at the sale, stating that by the purchase he would be enabled to pay the debt of $200, and another debt due one Jordan. Dukes was instructed by Ufford to bid to the amount of $375 for the negro, and after the sale Dukes, at the request of Ufford, paid to the coroner $50, the amount of the execution. The testimony of a witness, Blount, proved that he had previous to the sale been requested by Ufford to act as his agent in the purchase of the negro, but afterwards Ufford declined his assistance. After the sale Ufford requested witness to ascertain what price could be obtained for the negro from a trader in slaves then in the place. This witness also proved that Dukes demanded from the coroner a bill of sale for the negro and that the officer replied it was not then convenient to give him one, but that he would do so at some future time; that the coroner demanded also of Dukes the amount that the negro sold for, and that Dukes replied it was unnecessary to pay the whole money, as the surplus would be immediately paid by the coroner to Ufford, to whom it belonged.
The defendant relied on a bill of sale from the sheriff and introduced evidence of a judgment against Dukes, obtained in Craven Superior Court, and execution thereon, a levy on the negro Lewis by the sheriff *Page 123 
on 10 July, 1818, by virtue of said execution and a sale on the 27th of the same month, at which defendant became the purchaser.
A witness, Moore, testified on the part of the defendant that he was present at the sale made by the coroner on 7 July; that he asked Dukes privately if he was bidding for himself, and Dukes in reply affirmed that he was. At this time Dukes was very much involved and in desperate circumstances. On the next day Dukes told the (215) witness that he had paid the amount of the execution and was going to get possession of the negro. On the evening after the sale Ufford told the witness that the title to the negro was in Dukes and not in himself. Another witness, Jordan, also testified that on 10 July, when the sheriff levied on the negro, Ufford told the witness that the title to him was in Dukes and urged him to buy of Dukes. The sheriff testified that he had several writs of fi. fa in his hands against Dukes and that he could find no property to satisfy them. On 10 July, understanding that Dukes had purchased the negro at the coroner's sale, and that Ufford claimed title to him, he asked Ufford if he claimed the negro Lewis, to which Ufford replied that he had no claim or title to the negro; that Dukes owned him and that he had just informed Jordan of the same fact. The negro was then levied on as the property of Dukes, and on 27 July, the day of sale, Ufford told the sheriff that, notwithstanding the former declarations made by him, Dukes had no interest in the negro further than to sell him and pay himself the amount of the debt due from Ufford to him. Ufford forbade the sheriff to sell, but produced no bill of sale to himself. The deputy of the sheriff swore that he made the levy on the negro, who was at the time in the field of Ufford, but unemployed. Ufford never in the presence of this witness claimed the negro, and did not object to the levy.
The court instructed the jury that if they believed the conveyance taken by Ufford was intended fraudulently to cover the property of Dukes, the defendant was entitled to a verdict; on the contrary, if they believed it was fair and bona fide, the plaintiff ought to recover.
The jury found a verdict for the plaintiff, and defendant obtained a rule to show cause why a new trial should not be granted. The rule was discharged, and from the judgment rendered pursuant to the verdict the defendant appealed to this Court. (217)
Whether the title to the slave was in Ufford or Dukes depended on much conflicting evidence, which was fairly summed up and left by the judge to the jury. Their verdict ought not to be *Page 124 
disturbed, unless the evidence preponderates very strongly, against it, which we do not perceive that it does. The jury probably knew the witnesses and were able to judge of their credibility. Neither were the admissions of Ufford conclusive against his title; they formed a circumstance fit to be weighed and estimated with the other circumstances. The parties having agreed to amend, and all the proceedings after the agreement being in trover, we must consider it the same as if an actual amendment had been made; and so it must have been viewed by the parties, for (218) the evidence of it is contained in the proceedings up to the rendition of the final judgment.
PER CURIAM. No error.
Cited: Barnard v. Etheridge, 15 N.C. 296; Holland v. Crow, 34 N.C. 280;S. v. Yellowday, 152 N.C. 79.